**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


Kenneth Michael Sagraves,

       Plaintiff,

-V-                                            **Case No. 2:04-683**
                                                   **JUDGE SMITH**
                                                **Magistrate Judge Abel**

Lab One, *et al.*,

       Defendants.


<u>**OPINION AND ORDER**</u>

       This matter is before the Court on Defendant Lab One's Motion for Summary Judgment (Doc. 50/53).  For the reasons that follow, the Court **GRANTS** Defendant Lab One's Motion for Summary Judgment.

**I.      BACKGROUND**

       Plaintiff Kenneth Michael Sagraves ("Plaintiff" or "Sagraves"), an Ohio resident, brings this suit against Defendant Lab One, Inc. ("Lab One"), a national drug testing and health testing laboratory with corporate headquarters and laboratory facilities in Lenexa, Kansas.[1]  From November 2001 through May 2003, Plaintiff was an employed as a maintenance worker with United Church Homes, Inc. ("United").  During the time Plaintiff was employed at United, it implemented a policy of random drug testing of its employees.  This program, however, was not in place when Plaintiff began his employment with United.

---

[1] United Church Homes, Inc. was also named as a Defendant in this case, however, they were dismissed on July 1, 2004.

After implementing this policy, United contracted with Nationwide Drug Testing Services, Inc. ("Nationwide") to provide occupational drug testing services for United. Nationwide contracted with Defendant Lab One to provide laboratory drug testing services for specimens sent to Lab One by Nationwide's clients.

On April 28, 2003, at the end of Plaintiff's work shift, he was informed by his supervisor that he had been selected for a random drug test.  Plaintiff voluntarily submitted to the drug test. The drug test was conducted by his direct supervisor Jamie Burch and another co-worker.  The drug test was also witnessed by another co-worker supervisor from United's corporate offices in Marion, Ohio.

The supervisor was provided with a drug testing kit marketed by Lab One and manufactured by the Ora Sure Company.  The drug testing kit includes written collection materials and instructions, a test tube vial containing blue preservative liquid, a plastic collection wand with a sponge-like device attached to the end of the wand, and shipping labels and sealing labels.

The test instructs the supervisor to open the collection wand with a sponge-like swab on the end and the employee being tested holds the collection swab between his or her cheek and gum for a period of two to five minutes in order to collect the oral fluid sample to be analyzed. The collection wand is then taken from the employee being tested's mouth and must be broken in half to fit into the test tube vial containing the blue preservative liquid.  After the wand is inserted, the vial is sealed and enclosed in a shipping package to be sent directly to Lab One in Lenexa, Kansas.  During the testing of Plaintiff, he describes that more than half of the blue preservative fluid in the collection vial spilled out, but the tube was nonetheless sent off to Lab

-2-

One for testing.

Several days after Plaintiff was drug tested, he received a call from a Medical Review Officer who told him that his drug test had tested "positive" for traces of cocaine.  Plaintiff was given the option to elect a re-test and he chose to do so.  He was not, however, retested.  The re-test was performed on the same oral fluid sample.

In May 2003, Plaintiff was asked to give a urine sample by a drug counseling program used by United, so another drug test could be performed.  The results of that drug test were negative for the presence of cocaine and other illegal drugs.  Despite the results of this second test, Plaintiff was fired from his job in May 2003 due to the results of the first drug test analyzed by Lab One.

Plaintiff asserts that he is not a user of illegal drugs and at no time prior to the April 28, 2003 drug test did he ingest cocaine into his body in any way, form, or manner.  Plaintiff claims that as a result of his termination, he lost wages, residential housing he received from his employer, and other benefits such as health insurance and paid vacation and sick time.

On July 14, 2003, Plaintiff went to EMSI-Health Research Systems located at 1425 E. Dublin Granville Road, Columbus, Ohio , and gave a hair sample to have it tested for the presence of illegal drugs.  The hair sample was sent directly to and analyzed by Quest Diagnostic Laboratories of Las Vegas, Nevada.  The hair drug test is able to read the presence of cocaine and other illegal drugs in the body for approximately 90 days before the hair sample is collected.  Therefore, the hair drug test would have detected drugs for the period of time including when the oral fluid sample was taken and analyzed by United on April 28, 2003.  The results of the hair drug test were negative for the presence of cocaine and other illegal drugs.  Plaintiff therefore

argues that the drug test performed by Defendant Lab One was erroneous and falsely detected

cocaine.  As a result of this alleged erroneous test and Plaintiff's termination from United, he

initiated this lawsuit on September 9, 2003, in the Court of Common Pleas, Franklin County,

Ohio.  Defendant Lab One then removed this action on July 28, 2004 to this Court.  Plaintiff

asserts claims of breach of contract, negligence, intentional and negligent infliction of emotional

distress, and potentially defamation.


## II.    SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which

provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate,

however, if the opposing party fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at

trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial

Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).


When reviewing a summary judgment motion, the Court must draw all reasonable

-4-

inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[2]   The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.*  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257).  The nonmoving party must

---

[2]  *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same.  One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150.  In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.   DISCUSSION

Plaintiff Kenneth Michael Sagraves asserts that Defendant Lab One is liable to him based on theories of contract law and negligence for informing his employer United that Plaintiff tested positive for drugs in his system, which ultimately resulted in Plaintiff's discharge from his employer.

### A.   Contract

Plaintiff alleges that he has a valid contract claim against Defendant Lab One as a third-party beneficiary. While Plaintiff is correct in asserting that Ohio law does recognize third-party beneficiary liability in contract, he is incorrect in asserting that there is such liability in this case. Plaintiff alleges that a contract existed between Defendant Lab One and his previous employer United to which he was a third-party beneficiary. However, no such contract exists. The only contracts that are relevant to this case exists between United and Nationwide and Nationwide and Lab One.

Third-party beneficiaries are either: (1) a creditor beneficiary; (2) a donee beneficiary; or (3)

an incidental beneficiary.  *Visintine & Co. v. New York, Chicago & St. Louis R.R. Co.*, 169 Ohio St. 505, 507 (1959).  Only an intended third-party beneficiary, falling into one of the first two categories above, may exert rights to a contract to which it is not a party.  *TRIVOVA Corp. v. Pilkington Bros., P.L.C.,* 70 Ohio St.3d 271, 277 (1994).  Therefore, a third-party who merely receives a benefit from the contract, without more, is only an incidental beneficiary and may not sue under the contract.  *Visintine & Co.*, 169 Ohio St. at 507; *see also Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988).

Plaintiff has failed to set forth a contract to which he is a third-party beneficiary.  However, if Plaintiff could somehow rely on Defendant Lab One's contract with Nationwide, Plaintiff is not a third-party beneficiary to that contract.  Even if Plaintiff were to establish some third-party beneficiary to that contract, he would only be at best an incidental beneficiary and therefore cannot sue under the contract.  Therefore, Plaintiff's contract claim fails as a matter of law and Defendant Lab One is entitled to summary judgment on this claim.

### B.      Negligence

To establish a claim of negligence, Plaintiff must prove that Defendant Lab One owed him a duty, that Lab One breached that duty, that Plaintiff suffered harm, and that the harm was proximately caused by Lab One's breach of duty.  *Cooperider v. Peterseim*, 103 Ohio App.3d 476, 479 (Ohio App. 9th Dist. 1995).  The existence of a duty in a negligence action is a question of law for the Court.  *Blanton v. Pine Creek Farms*, 100 Ohio App.3d 677, 685 (Ohio App. 4th Dist. 1995).

Plaintiff does not set forth any argument on the elements of a negligence claim, but merely argues that the drug test was erroneously analyzed by Lab One because some of the fluid had leaked out and because the machine was not properly calibrated.  While Plaintiff does not address the first

element, whether Defendant Lab One owed Plaintiff a duty, the Court will assume he would argue a duty based on the third-party beneficiary argument asserted above.

Duty is "an obligation imposed by law on one person to act for the benefit of another person due to the relationship between them. *Berdyck v. Shinde*, 66 Ohio St.3d 573, 578 (1993). Generally, there is no relationship or duty between an examiner and an individual he or she is examining on behalf of a third-party. *New York Cent. R.R. Co. v. Wiler*, 124 Ohio St. 118, 122-123 (1931); *see also Smith v. Katzman*, 81 Ohio App.3d 682, 685-86 (Ohio App. 8th Dist. 1992). Such a duty does exist when a doctor is examining an individual for purposes of cure or treatment. However, there is a distinction that when the purpose of the examination is for the information of a third-party, no relationship or duty in negligence exists. *See Wiler*, 124 Ohio St. at 122-123; *Katzman*, 81 Ohio App.3d at 685-86.

Defendant Lab One's test and analysis was to provide information to Nationwide, not Plaintiff. The test was analyzed pursuant to the contractual laboratory services agreement between Lab One and Nationwide. Therefore, there is no duty owed to Plaintiff by Defendant Lab One.

Even if Plaintiff established that Defendant owed him a duty, there was no breach of that duty. Plaintiff has not been able to establish any evidence of a breach by Defendant Lab One. Plaintiff has failed to show how the testing procedures utilized by Lab One fail to comply with industry standards. The problems with the testing that Plaintiff is primarily concerned with seem to be on the administration end of the test. Defendant Lab One, however, did not perform the collection of the specimen. Rather, that was collected by employees of United and United has been dismissed from the case.

Further, Plaintiff has failed to designate any expert witness to testify regarding the standard

of care concerning Defendant's test results and/or testing procedures.  Expert testimony is required to establish the standard of care of a drug testing laboratory, as any alleged incompetence is not so apparent as to be within the comprehension of a layperson and requires more than common knowledge and experience to understand it.  *Simon v. Drake Construction Co.*, 87 Ohio App.3d 23, 26 (Ohio App. 8th Dist. 1993).  The Court does not find any breach of duty by Defendant.

Even if Plaintiff were to establish that Defendant Lab One owed him a duty and breached that duty, he could not show that Lab One was the proximate cause of his alleged injuries. Proximate causation is some reasonable connection between the act and omission of the defendant and the damage the plaintiff has suffered.  Prosser & Keeton, Law of Torts (5th Ed. 1984) 263, Section 41).  Lab One's testing of Plaintiff's specimen, however, was not the proximate cause of his termination.  Plaintiff's specimen was retested by an independent laboratory, CRL and it was that second positive test result that resulted in Plaintiff's employer requiring Plaintiff to complete an employee substance abuse assistance program to retain his employment.  Plaintiff, however, chose not to complete this program and was subsequently terminated as a result.  Therefore, Plaintiff was not terminated for the positive test, he was given a second chance.  Defendant Lab One is therefore entitled to summary judgment on Plaintiff's negligence claim.

## C.    Intentional Infliction of Emotional Distress

Plaintiff argues that the erroneous and false drug test analyzed by Defendant Lab One caused him extreme emotional shock in that he suffered "loss of his employment, loss of self esteem, worried about his health and suffered extreme worry and physical symptoms resulting from the stress of weighty concerns about his finances and loss of income."  (Pl's Memo. in Opp. at 25).

Under Ohio law, Plaintiff must prove that: (1) Lab One either intended to cause emotional

distress or knew or should have known that actions taken would result in serious emotional distress to Plaintiff; (2) that Lab One's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that Lab One's actions were the proximate cause of Plaintiff's psychic injury; and (4) that the mental anguish suffered by Plaintiff is serious and of a nature that no reasonable man could be expected to endure it. *Burkes v. Stidham*, 107 Ohio App.3d 363, 375 (8th Dist. 1995).  Ohio courts have held, relying on the Restatement of the Law 2d, Torts, 71 Section 46 (1965), that extreme and outrageous conduct occurs when the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Plaintiff asserts that the actions that caused the intentional infliction of emotional distress were Defendant's reporting of erroneous and false drug test results to Plaintiff's employer, which caused Plaintiff to lose his job.  Plaintiff also seems to be arguing that Defendant's marketing of its oral fluid testing procedures as extremely accurate somehow caused his emotional harm.

In *Hall v. United Labs, Inc. et al.*, 31 F. Supp. 2d 1039 (N.D. Ohio 1998), the Court was faced with similar issues.  Plaintiff in *Hall* asserted a claim for intentional infliction of emotional distress resulting from the reporting of an alleged false positive drug test.  The *Hall* Court concluded that the laboratory's conduct of reporting test results did not rise to the level of being so outrageous as to shock the reasonable person or to offend all sense of decency and therefore dismissed Plaintiff's intentional infliction of emotional distress claim.

Defendant Lab One argues, and the Court agrees, that there is no outrageous behavior by Lab One.  There is no evidence of any psychic injury or extreme mental anguish suffered by Plaintiff.  There is no evidence of any treatment Plaintiff received for such alleged injuries.  Further, there is

-10-

no evidence of intent or willful or wanton conduct by Lab One, nor is there any evidence that if Plaintiff suffered from some injury, that Defendant Lab One's actions were the proximate cause of such injury. Therefore, Defendant Lab One is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

### D.    Negligent Infliction of Emotional Distress

Plaintiff claims that Defendant Lab One's actions caused him serious mental anguish, emotional trauma, humiliation, and serious emotional shock. (Compl. at ¶22). While there is no longer a contemporaneous physical injury requirement to maintain a claim for negligent infliction of emotional distress, *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 133 (1983), some apprehension of the risk of such a physical injury is required. *Paugh v. Hanks*, 6 Ohio St.3d 72, 80 (1983).

In support of his claim for negligent infliction of emotional distress, Plaintiff relies on a reversed opinion, *Dobran v. Franciscan Med. Ctr.*, 149 Ohio App.3d 455 (Ohio Ct. App. 2002). The Ohio Supreme Court reversed the appellate court's decision in *Dobran* on April 28, 2004, well before Plaintiff submitted his Memorandum in Opposition in this case citing to the appellate court decision. In addition to not citing any persuasive authority to support his position, Plaintiff has failed to set forth any evidence of negligent infliction of emotional distress caused by Defendant Lab One. In order to recover for negligent infliction of emotional distress, Plaintiff must have suffered distress caused by fear of actual physical peril. Plaintiff has not provided any evidence of any emotional distress. Further, Plaintiff admits that he never appreciated, nor was cognizant of a real physical

peril.  (Pl's Depo. at 158.15-159.5).  Therefore, Defendant is entitled to summary judgment on Plaintiff's negligent infliction of emotional distress claim.

>    **E.     Defamation**

Defendant asserts in its' Motion for Summary Judgment that while Plaintiff does not expressly state a claim for defamation, his pleadings appear to seek defamation damages.  Therefore, out of caution and considering Ohio's liberal pleadings standard, Defendant argued it should be entitled to summary judgment on such a claim.  Plaintiff, however, did not address this issue in his Memorandum in Opposition, therefore the Court will assume that Plaintiff did not intend to plead a defamation claim.


**IV.     CONCLUSION**

Based on the above, the Court **GRANTS** Defendant Lab One's Motion for Summary Judgment.

The Clerk shall remove Doc. 50/53 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

>    **IT IS SO ORDERED.**


>                  **/s/ George C. Smith**
>                  **GEORGE C. SMITH, JUDGE**
>                  **UNITED STATES DISTRICT COURT**